I appear on behalf of Appellant Samantha Orduno. The DPPA case that's before you is akin to two different cases. One is the class action case and then we have the individual claim that remained after certification was denied. Appellant Orduno argues several different issues on appeal, but in the interest of time I intend to focus on three. The denial of class certification, the ruling as a matter of law that the city entity cannot be directly liable, and trial evidentiary rulings that affected the jury result. Jumping right into the class action issue your honors. The district court erroneously denied class certification on two grounds, numerosity and predominance. In both instances the court erroneously applied the law of the circuit starting with the numerosity requirement. Appellant identified the proposed class in her complaint. Under 23A1, numerosity requirement requires that she show that the putative class is so large that joinder of all members would be impracticable. There aren't any rigid requirements as the court knows and it's usually presumed that if you're able to show at least 40 you meet the numerosity requirement. Now this court has looked at different factors to evaluate numerosity including... You agree each plaintiff has to prove information was obtained for an impermissible purpose? Not at class certification your honor. Certainly once we get into the case that is true, but not to get the class certified. Wait, if that's the issue that's what destroys predominance in my view, in the district court's view. Well it doesn't your honor. Forget numerosity, that's not as significant I don't think. Okay, well let's jump into the predominance factor. Not that I disagree with the district court on numerosity. Well to be... Improper purpose. Yeah, I'm worried whether you're defining the class based on whether the claim has merit. You're saying well they're members of the class only if their information was taken. Well your honor that is how the class is often defined and it's often how class actions before this court have been defined. We can look at the Sandusky case which related to the Telephone Consumer Protection Act and there the class was defined as those who had been violated or that there had been the victim of that abuse of that act. Even more recently this court just in December heard two different class action cases. The Postalco case for example, that class was defined as individuals in custody who have been or will be diagnosed with the infection but who don't get treatment with a certain drug. In the Stewart versus State Farm case, the class action was defined as policyholders who received actual cash value payments that were in contravention of Arkansas law. It's not uncommon for the class to be defined in a way that includes that there has been a breach of law. So that your honor should not be an impediment to the class. Are you familiar with this concept of a fail-safe class? I'm sorry? Are you familiar with the concept of a fail-safe class? No your honor. Okay. But with regard to the different kinds of class actions that this court has had no problem finding were properly certifiable. They have been defined in a way that the people who will qualify for the class are those whose rights have been violated. With regard to the predominance your honor. When is that determined? It would be determined during the discovery after the class certification. During discovery? It's a contest. So you have you have a multiple evidentiary hearings, a time out in discovery while this is sorted out? Well your honor, yes. But it isn't as complicated as it sounds. What cases ever involve that? We've got DPPA cases that we've cited and that have been across this country that have been the same class action that we're asking to be certified here. Typically DPPA have two different kinds of cases. How many circuits? How many circuit court decisions? Not circuit court decisions your honor. Although the Pickler case in the third circuit dealt with a class action. But there have been various cases across the country. We're dealing in the DPPA cases with either you've got an individual who has had several people entities access her, which is the McDonough case and many of the cases you've heard. And then we have the other side of the coin which is where you've got one violator who's accessed many people. That's this case. When we look at the predominance factor not only do we have common questions of law and fact, but we also look at the superiority factor. As I said this has been done in many DPPA cases before and it should be here. In this case what we know is that there will be several common predominant issues of fact and law. For example, in each of those cases if we're going to bring individual cases we'd have to show how the motor vehicle records are maintained in the state. How Chief Peterzak had access and what he did to obtain the information. We'll have to have testimony about what the data shows from the audit. How do you interpret it? You're going to have to have testimony. What's a legitimate law enforcement purpose? That's already been admitted. Some of it has been admitted. Well most of what you just rattled off is proving liability which has been admitted. In addition to those factors however, Your Honor, there's also going to be common questions about Peterzak's employment history and also policies and practice and his willful disregard. That wasn't admitted, Your Honor. Now what we know is that the same evidence, the same witnesses, and the same documents will be used to prove the majority of the issues. I know that the other side wants to argue that this is going to be too cumbersome and too difficult to deal with the impermissibility issue. That's not been the case in many cases. I don't see any efficiency here compared to the way McDonnell was litigated, for example. You might have a thousand people in this class, Your Honor. The efficiencies of this streamline it down completely. We're going to have to have a thousand, how many thousand hearings to get down to the thousand people in the class? I don't think we'd have to have very many, Your Honor. We'd have summary judgment motions which have happened in the other DPPA cases. Usually in the course of discovery, what you're going to determine, there's either going to be facts and evidence that are going to show it was legitimate, in which case you easily can stipulate to dismiss. Is it going to be that easy though? I mean you've got a chief who would have permissible purposes to view a lot of these records, correct? Typically a police chief would have some reason to access individuals, yes. I'm just struggling on how this isn't going to be what the district court was concerned about. A bunch of mini trials where there will be disputes on whether it was permissible or impermissible. What I think you will see, Your Honor, is that when we get into the discovery is that there's different kind of subclasses, particularly of example, Samantha Orduno's family members, there's discovery right around that. You're going to cover several. Same thing when you're talking about public figures. The same thing when you're talking about co-workers. In fact, even in the discovery order issued in this case, which is in the addendum, one of the issues was production of information about 200 other people's accesses. I thought from the briefing that the discovery showed access of 5,747 people. That's probably approximately right. Yes, Your Honor. So how do you now whittle this down? Oh, this is not going to be any problem at all because Ms. Orduno's family members are easy. Because the categories that are viewed, what you're going to And for several, there's a very quick examination period. I think I examined him for about an hour and covered close to 200 individuals, at least over 100. That's all you were allowed to cover, right? Correct. My point is it was not inefficient and it did not take a ton of time. Either Dayton has records to substantiate these accesses or they don't. And with regard to that discovery order, the judge had a similar analysis when the argument was this is going to be too burdensome to come up with information for 200. The court quickly dismissed that argument and said, in reality, we're dealing about different groups of people and it's not going to require an individual burdensome amount of time. The alternative, of course, is to have a thousand cases. Now, that won't happen here because, as the court knows, the names of the individuals have always been concealed. Despite Lynn Banks' special investigation report advising Dayton to inform the victims, they never did. They didn't then. They didn't during the litigation. They have it now. So we have a class of individuals who've never been informed of the abuse of their information. So that is a problem in this case as well, in terms of the cover-up that we've seen in this case. This is the only way that those individuals will even know that their information has been accessed. But the truth is, no court wants a thousand cases filed on this issue. A class action is the superior way to handle such a case. I want to quickly touch on the trial evidentiary rulings, Your Honors. At trial, as you note, there was significant evidence that was excluded regarding damages. In particular, Ms. Orduno was not allowed to put forth evidence that would explain her emotional distress. Instead, the jury was asked to evaluate her emotional distress out of complete context. In addition, with regard to punitive damages, even though the court in the earlier part of the case had decided that prior accesses by Chief Peterzak, whether it be of Orduno, whether it be of her instruction, told the jury to consider reprehensibility, pattern of conduct, prior similar conduct. Notwithstanding these rulings by the district court, the evidence was not allowed to come in to do those very things. Were the other accesses that you've identified there with the family members, were those, was it stipulated or agreed upon that they were for impermissible purposes? No, Your Honor. They were not stipulated. So how is that? It seemed to me that the district court was saying, we just don't know about those, right? And so we would have to have some evidence and discussion as to whether or not they were admissible for that purpose. But we don't have to know whether or not they were impermissible or not to understand that that would affect Ms. Orduno's emotional distress. What was put before the jury, she was accessed six times by Chief Peterzak. That was far from the truth and the reality and the context. She'd been accessed over 20 times. Her husband had been accessed. Her daughter had been accessed. And you can't portray to the jury what the emotional distress, what the personal security issues that she felt about that, and the fear about that. It was a distorted view to the jury, and it was prejudicial. It was substantially influencing the jury verdict. So we not only have that with regard to her actual damages, which were not fairly portrayed to the jury, or the punitive damages, which clearly were relevant and probative as per orders in the case. I see I only have three minutes left, which I need to reserve for rebuttal. Thank you. Thank you. Ms. Kendall? Thank you, Your Honors. May it please the court, counsel. My name is Susan Kendall, and I am here on behalf of the City of Dayton and Richard Peterzak. We are here asking for affirmation of all the court's rulings except for the vicarious liability. There are many issues, as counsel pointed out. I'm also would like to focus on a few of what I think are the key issues in this class, in this case, the class certification issue, as well as the evidentiary rulings regarding the accesses barred by the statute of limitations. I think the court's questions hit the head on the nail when it was asking about how the court ruled regarding the class certification. The fact of the matter is, in this case, there was a limited period of discovery specific to class certification. Ms. Arduno's counsels took no depositions during that time period before filing certification. They requested no full audit of the DVS accesses and filing that information. In fact, the only deposition that was taken was right before they filed their reply memorandum, and that was the deposition of Lynn Banks. If I understand her argument, she posits that it would be fairly straightforward. Either there's something in the record that shows it's permissible or it's not. It would fall into the impermissible category, which presumably could be bigger. Would you agree that it's a fairly simple on and off switch? I distinctly disagree, Your Honor. We are talking about, as the court pointed out, accesses of 5,000 or so individuals, and I think 15,000 accesses that would need to be looked at to reach that preponderance standard, which is a higher standard. It's a stricter standard that this court has determined. Ms. Arduno was required to establish liability for those, and so it would not be a question. The question, not only would Mr. Pietrzak have to be asked about all those accesses, but the city would have to look at whether there's records or not. There are certain instances where it would be an easier question of class action, and that there was perhaps no other reason but an impermissible purpose for those accesses. Those cases are different and would be easier than a police chief, in this case, that would have multiple reasons to validity access motor vehicle records. Some of those circumstances... This case like Roth and the Sixth Circuit would be quite different, because it's the liability is on a DMV for improper disclosure, and the issues would predominate probably on that. Yes. Whereas here, we're talking about the access or liability for either simply obtaining or for improper using. Correct. You have to get into purpose, and as to use, you have to get into use, presumably, although there doesn't seem to have been any use or thought about in this case. Correct, Your Honor. The testimony at trial was that there was nothing done with that information, and I think the court is correct. There are circumstances where perhaps there is the access and the use that is clear or is shared with some organization, or I can think of some other examples. For example, if an officer's rights to access the DVS system were terminated and to use someone else's access, we would know that that was not permissible. You're accessing it when you don't have rights to do so, or an employee who access information that has no need for that information for their job. For example, a social worker who accesses individuals who do not have a case file with that county or any relation to someone at that county. Those cases would be distinctly different where you could see a class could be defined because there would be no reason but a permissible purpose. Here, the quote, impermissible purpose. As you describe it, that doesn't sound like one that's easy at all. Social worker might have a lot of reasons to access files of persons, I don't know, maybe clients, maybe about to be clients, maybe have relationships with clients. The distinct difference, Your Honor, is in cases like that, you have a list of individuals that have the case files and their relatives and individuals that have been accessed, and we've had, in fact, class actions involving that, and those cases are distinctly different. You can look at the records and see what the connections are and what they aren't. Here, essentially, there would be, what was the court's concern, is many trials regarding that. Under that Blades case, the plaintiff is required, this Eighth Circuit, to determine the underlying elements of liability, which would require many trials in this case. Can you tell me the DPPA class certifications that have been specifically affirmed by a circuit court? I am not aware of any, Your Honor. None? No. And the cases here in this district that we have had class certification have not been appealed. And I'm actually speaking of some of those circumstances involving the social work, which were easier questions that can happen during the class discovery. Here, not only did plaintiff's counsel sit on their hands and not do any work to determine that, but there would have to be substantial work in determining whether there would be liability in those cases. I want to address the evidentiary issue, and that is the exclusion by the district court of the accesses barred by the statute of limitation of Arduino and others. The district court did not abuse its discretion in not allowing that evidence in trial. The jury, who is in the best position to evaluate that evidence, looked at Ms. Arduino's damage testimony. She had no medical records. She had no type of documents. Speaking to any security system or credit monitoring or anything like that. But what about the evidence of the accesses of her family members? Why wouldn't that be relevant to her damages, to her fear, her uneasiness about what happened? Those, Your Honor, were in dispute. We did not admit liability, and that is a key difference. So the court would have to look at whether, in fact, there was a permissible purpose for that, for family members who live within the city and drive vehicles within the city. So we'd have to look at the permissibility of those accesses, which would confuse the jury as to what the issue is. How many of those were there? Were there a number, a large number or a manageable number that there could have been enough evidence presented that wouldn't confuse the jury, that actually would put this into context? Because it does seem that that's part of her claim, right? That not only was I accessed, but you reached out and were looking at my family members as well. I don't recall a specific number, Your Honor, but I do know several of those were barred by the statute of limitation, which is then putting cases that are barred by the statute of limitation that you're confusing the jury over here. And I think one of the distinctions here is if we look at hostile work environment claims, which is the cases that Ms. Arduno relies on in support of her argument here, that the jury should have been allowed to hear not only accesses for damages, but punitive damages. And there's a distinct difference here because hostile work environment claims, by their nature, involve repeated conduct. Where here, we're talking about accesses that are discrete acts. And a DVS access is a discrete act that occurs at a certain period of time. And the Supreme Court and the National Railroad Corporation versus Morgan talked about what discrete acts are. And in that case, it was in the employment context, you know, your termination, your failure to promote type cases, your discipline. But the court went on to say, the key is whether there's separate actionable acts, which is exactly what these accesses are. We have a statute that has liquidated damages tied to a specific access here. In fact, it seems to me you're... Well, I know when we consider that if the class issue is still alive, which counsel, we all assume at this point. But if we're just talking about the damages, Ms. Arduno's case, when did she learn about all these accesses? After suit was filed or just before suit was filed? This is not like hostile work environment where you live through it for 10 years and you can only sue for four. She didn't live through this. She learned about it way after the fact, so the question is, how did that affect her, magnify her injury? This emotional distress was all much later than the statutorily barred events, right? Correct, Your Honor. In fact, she learned of some of the accesses in December of 2012, but the list of the DVX accesses was much later. That was 2017. When you look at the damages, Ms. Arduno's testimony talked specifically about her alleged damages, her security system that went in in 2014 after she had filed the lawsuit. So you're absolutely right. And it goes to my point that these cases are distinctly different than when you have repeated conduct of damages there versus she learned of the accesses much later. And the jury was in the best position to evaluate those damages at the case. Your Honor, Ms. Arduno also points out that she believes some of the district court's rulings in discovery with respect to the motion to compel and us looking at some of those accesses should have persuaded the district court to allow those accesses in because there was discovery allowed on that. I distinctly disagree with that, Your Honor. Here, we had a case where Mr. Pietrzak admitted liability for specific six accesses here. The court had pointed out in respect to the motion to compel that that was allowed to talk about liability. When liability was admitted, that is no longer relevant and is in fact highly prejudicial in circumstances. And we would have to get into whether or not those accesses were permissible. So we're looking at, again, many trials on all those accesses. It is highly prejudicial and confusing to the jury in that. The admission of liability prompts me to ask a question before your time runs out. And it just occurred to me as I was considering the attorney's fees issue. There was a Rule 68 offer of settlement before trial. That is correct. That exceeded, barely, but it did exceed the ultimate modified, upwardly modified judgment of $100,000, right? Correct. Are you aware of any case law which has considered the impact of, when counsel refuses to accept an offer of settlement and takes a case to trial and recovers less than the offer of settlement, are you aware of case law discussing the impact of that, if any, on attorney's fee award? I don't have a case right in front of me, but I don't think the court needs to go there because Ms. Arduno's counsel did not ask for that. It's potentially serious. I'm not surprised there isn't any case law, but I wondered. Yeah, Ms. Arduno did concede and in fact acknowledged the cutoff of our Rule 68 offer and didn't ask for fees going through trial regarding that. With respect to the attorney's fees, I know my time is briefly up, but the court got it right in this case with respect to the reduction of attorney's fees. Frankly, the district court could have done more. There are six attorneys in this case who, again, failed to do any work before class certification and in fact achieved very little for their client. They're asking for a million dollars in damages. In fact, we're given zero in actual damages and 85,000 in punitive damages, a significantly lower amount than they were asking for in this case. Also, Your Honor, the record is clear that there was excessive time for things done by plaintiff's counsel, including 35 hours by five attorneys for a complaint. It was very similar to a number of other Drivers Privacy Protection Act complaints filed in this court. So the district court got that right, Your Honor, and the record is very substantiated with respect to that reduction. Plaintiff's counsel still got over $140,000 in fees, but the reductions were appropriate based on the excessive time and the limited success that was achieved by her counsel. Thank you, Your Honors. Thank you. Rebuttal, Ms. Van Orn. Yes, Your Honor. First, it's clear that the appellees are asking this court to change the Rule 23 standards if this court is upheld. Again, even just under the recent case of Postalco, this court specifically said a decision to certify a class is far from a conclusive judgment on the merits of the case. Rule 23 grants no license to engage in free-ranging merits inquiries at the certification stage. The task is not to determine the final disposition of plaintiff's claims, but instead to examine whether those claims are appropriate for class resolution. That's what Rule 23 is about. That's the standard. The court has never required liability proven. Is it pre-Duke or post-Duke? It is one that this court issued just in December of this year, Your Honor. Is it in your brief? No, because the briefing was done quite some time ago and this case just came out. So the court... Why don't you send us a 28-J letter then? We certainly will. So again, what they're asking for is to change the complete standard of Rule 23 and the precedent of this case, and this court should not do so. Again, we cited various DPPA cases where this case has been handled. Well, isn't there a difference between a class that can be identified at the beginning subject to a later determination whether the claim has merit and a class like the one you're proposing that can't even be identified until the end of the case when the liability decision is made? It can be ascertained, Your Honor. You're talking about the ascertainability factor which Sandusky and this court dealt with. Ascertainability is whether you can identify who they are from objective criteria. That can be done with the audit report. That is not a question. Well, I thought you said that the only people in the class would be those whose information was accessed impermissibly. That is correct, Your Honor. Well, how can that be identified by this report? We can identify who the potential class members are after the class is certified. Again, following your own precedent in this court, we will then be able to determine who it is that's going to actually get any reward out of it. And this court has cited the Seventh Circuit opinion that says that just because you have a class and it's set up at the beginning, it doesn't mean everyone's going to recover. But those who aren't entitled don't. And that's how the class should work. Now, with regard quickly to the emotional distress issue, here's an example, Your Honors. If we had a peeping Tom who viewed a woman one time and she didn't know about it, her emotional distress probably doesn't arise until she finds out about it. Now, let's say she finds out that she wasn't viewed one time. She was viewed 25 times in the past. And then she found out that others were. So that all contributes to her emotional distress and the severity of how she had been violated. I'm almost out of time, Your Honors. I don't know if I could have 30 seconds to address the attorney's fee issue or not. Well, I opened it up, but counsel then argued it. So yes, it's proper rebuttal because of that. Okay, Your Honors. I simply want to note that under the attorney fee standard of Hensley, I didn't say you could... 30 seconds more. Okay. With regard to the reasonable attorney's fees, Your Honor, the reduction of 20% for lack of success simply isn't supported by the record. With regard to the reduction of 40%... Despite the Rule 68 aspect? Yes, the Rule 68 consequences, you cut off your fees. They did cut off our fees and we didn't recover any fees after that. That's the consequence of Rule 68. No fees for trying the case? No, we did not seek any fees for trying the case. Okay. So we only sought the fees that related up to the time of the Rule 68. And so that was the consequence and we bore it. We bared it. But the result was a significant result. It was the first DPPA case tried in their Punitive Damages Award. I don't see how that could possibly not be a successful result. From the beginning of this case, Your Honors, in denying class... This is not 30 seconds. Okay. Well, Your Honors... You fully briefed this. We did. So I was simply going to say we would ask that you reverse and remand on the class certification issue and on the attorney's fees issue and on our request for a new trial. And we ask that as a rule, as a matter of law, that government entities can be directly liable under the DPPA as briefed. Thank you, Your Honors. Thank you, Counsel. The case has been thoroughly briefed and well argued and we will take it under advisement. Please call the next case. The next case is 18-1648, District of Minnesota. Melissa Alaruzo et al v. Super Value et al.